UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | **CRIMINAL NO.** |
| ) | |
| v. ) | |
| ) | **VIOLATIONS:** |
| **NIKHIL PAREKH** ) | |
| ) | **Count 1: 18 U.S.C. § 371** |
| **Defendant.** ) | **(Conspiracy)** |
| ) | |
| ) | **18 U.S.C. § 981(a)(1)(C),** |
| ) | **28 U.S.C. § 2461(c), and 21 U.S.C. 853(p)** |
| ) | **(Criminal Forfeiture)** |

# INFORMATION

The United States Attorney charges:

At all times material to this Information,

## INTRODUCTION

*COMPANY # 1*

1.  COMPANY # 1 was an international information technology ("IT") asset disposition company headquartered in Cork, Ireland, with locations across the United States, including in the broader Washington, D.C.-metropolitan region. More specifically, COMPANY # 1 contracted with public and private entities in the United States and abroad to securely destroy a variety of media, including hard drives, laptops, printers, tablets, smartphones, memory devices, USB sticks, CDs, and tapes. COMPANY # 1 offered both on-site and offsite destruction services, with the former involving COMPANY # 1 bringing a specialized truck to the client site and having its employees operate four shaft shredders with screens that destroyed any type of media rendering the data unrecoverable, with residual, shredded materials being recycled. Upon completion of the destruction of the relevant IT assets, COMPANY # 1 would issue a Certificate of Destruction to its customers that the relevant material had been put beyond use, completely dismantled and

1

recycled in an environmentally responsible manner, and any data storage devices had been effective destroyed pursuant to standard data destruction processes outlined in the National Institute of Science and Technology's Guidelines for Guidelines for Media Sanitization.

*Relevant Individuals*

2. Nikhail PAREKH was an employee of COMPANY # 1 from February 13, 2019 through September 15, 2023, during which time he was based out of the company's Hyattsville, Maryland location. During this time, he was largely employed as a "driver," at the company, which meant that he drove the specially equipped COMPANY # 1 vans to client sites to either conduct onsite shredding of IT assets or to transport them to COMPANY # 1's secure shredding facility, which, initially, was located in Hyattsville, Maryland, before it was relocated to Winchester, Virginia.

3. Co-conspirator # 1 was an employee of COMPANY # 1 from July 8, 2019 through September 2023. Like PAREKH, Co-conspirator # 1 was based out of the company's Hyattsville, Maryland office / warehouse, and also served as a "driver" with the same responsibilities described for PAREKH above.

4. It was common during this period of time covering the acts described below for multiple COMPANY # 1 employees to be dispatched to a particular job site to assist with the requisition of the to-be disposed items, loading them on to the specially equipped COMPANY # 1 van, and facilitating the secure shredding of the materials if the company had opted for on-site destruction services. PAREKH and Co-conspirator # 1 were frequently paired together and dispatched to the same client sites for the same jobs.

## COUNT ONE
**(Conspiracy – 18 U.S.C. § 371)**

5. The introductory allegations set for in paragraphs 1 through 4 are re-alleged and incorporated by reference as though fully set for should be forth herein.

**The Conspiracy**

6. From on or about July 2022 through on or about August 2023, in the District of Columbia and elsewhere, the defendant:

**NIKHAIL PAREKH,**

with others known with others known and unknown, did knowingly and unlawfully conspire, confederate, and agree together and with each other to commit an offense against the United States, namely, to receive, possess, conceal, store, barter, sell, or dispose of any goods, wares, or merchandise, securities, or money of the value of $5,000 or more, that is, cellular telephones, tablets, laptops, and other electronic devices, which had crossed a state boundary after being stolen, unlawfully converted, or taken, knowing the same to have been stolen, unlawfully converted, or taken, in violation of Title 18, United States Code, Section 2315.

**Purposes of the Conspiracy**

7. The purpose of the conspiracy was for PAREKH, Co-conspirator # 1, and other known and unknown co-conspirators to enrich themselves by converting digital devices that they were responsible for shredding on behalf of COMPANY # 1 and selling them for their own personal gain to various electronics re-sellers in Virginia and Maryland.

**Manner and Means**

8. The conspiracy was carried out through the following manner and means, among others:

    a. Co-conspirator # 1 and PAREKH would be assigned to jobs at different client sites and given use of the company vans for transportation and shredding.

    b. Upon reaching the client site, Co-conspirator # 1, PAREKH, and other known and unknown co-conspirators would take custody of the IT assets, scan them into COMPANY # 1's system, and then begin removing the various digital devices

  slated for destruction from the various palettes they had received from the customers.

- c. Depending on the location of the site and the time at which they had finished allegedly providing the destruction services, they would then either take the company van directly to the electronics resellers and offload the items slated for destruction and sell them directly, or, they would bring the van back to the COMPANY # 1 warehouse, remove the items to be stolen from the van, and maintain custody of them until such time as they saw fit to resell them to an electronics reseller.

- d. At times, other employees at COMPANY # 1, who were dispatched to different client sites for either on-site shredding or transport of items for offsite shredding, would take possession of IT assets, and PAREKH and Co-conspirator # 1 would come to acquire them prior to their destruction and sell them on to resellers for their personal gain.

## Overt Acts

9. In furtherance of the conspiracy, and to effect its objects and purposes, PAREKH, Co-conspirator # 1, and other known and unknown co-conspirators committed the following overt acts, among others, in the District of Columbia, and elsewhere:

- a. On or about January 20, 2023, COMPANY # 1 employees were dispatched to a warehouse in Linthicum Heights, Maryland, run by a contractor of a federal executive branch agency, AGENCY # 1. While there, COMPANY # 1 took custody of 10 pallets of government-furnished IT equipment slated by AGENCY #

4

1 for disposition. The material included hundreds of smartphones, monitors, printers, scanners, personal computers, laptops, and other IT assets.

b. Beginning on or about March 2, 2023, PAREKH and Co-conspirator # 1 were assigned to an onsite shredding job for AGENCY # 2, a U.S. government entity, which maintained a warehouse for its to-be-disposed of items in Landover, Maryland.

c. Over the course of March 2-3, 2023, PAREKH and Co-conspirator # 1 took possession of more than 400 laptops, 1,300 smartphones, 70 servers, 20 cameras, and nearly 30 video-teleconference phones. Co-Conspirator # 1 returned to the warehouse for AGENCY # 2 in June 2023, and took custody of hundreds more IT assets.

d. At various times during the course the conspiracy, PAREKH and Co-Conspirator # 1 were assigned to jobs at additional executive branch agencies and private businesses in Maryland, the District of Columbia, and elsewhere, from which they ultimately appropriated and converted for their own personal use IT assets that clients had paid Company # 1 to destroy.

e. In July 2023, PAREKH contacted Witness # 1, the owner of a secondhand electronics store in Haymarket, Virginia. PAREKH agreed to sell items that he and Co-Conspirator # 1 had stolen from COMPANY # 1 after taking possession of them in the course of their employment, including IT assets from both Agency # 1 and Agency # 2.

f. When, during the course of the inventory, Witness # 1 noticed that many of the items that PAREKH had dropped off contained asset tag stickers on the back of

them denoting to whom they belonged, including AGENCY # 2, and asked PAREKH if the devices were meant to be there, PAREKH noted that all devices were slated for destruction and said the government-furnished devices should be used for parts.

g. On July 28, 2023, PAREKH called Co-Conspirator # 1 and said that as soon as Witness # 1 paid PAREKH the money, he would send it to Co-Conspirator # 1.

h. On August 1, 2023, Co-Conspirator # 1 and PAREKH had an additional phone call, in which PAREKH confirmed that Witness # 1 had paid him, and that he would pay Co-Conspirator # 1 in turn. The two also discussed how Co-Conspirator # 1 had recently come into possession of hundreds of iPhones and approximately two dozen tablets, and the two discussed what prices Co-Conspirator # 1 should demand upon approaching a separate electronics re-seller located in Maryland.

i. On August 1, 2023, Witness # 1 ultimately paid PAREKH one installment for the digital devices he dropped off on July 18, 2023, in the amount of $1,000 through the payments application Zelle. PAREKH then immediately paid $300 to Co-Conspirator # 1.

**(Conspiracy to Sell Stolen Goods, in violation of 18 U.S.C. § 371)**

## NOTICE OF FORFEITURE

The allegations contained in Count ONE of this Information are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461.

Pursuant to title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461, upon conviction of a conspiracy to violate section 2315, in violation of Title

18, United States Code, Section 371, the defendant shall forfeit all property, real or personal, involved in the offense and any property traceable thereto, including the following items:

- TP1036 Tablet with box and charger
- Seagate 1TB HDD, S/N WGS32XN7
- Toshiba Laptop, SN YB178298R
- Dell Inspiron Laptop, DP/N XMT7Y A01
- Samsung Galaxy S5 Cell Phone
- Samsung Cell Phone, IMEI 356550755147703, with case
- Samsung Galaxy Note 10+ Cell Phone, S/N RF8N104VZMF, with case
- Samsung Cell Phone w/ Red Case, IMEI 350121673621603
- iPad Model A1566, School of Incarnation Sticker 0000364
- Microsoft 256 GB Tablet w/ keyboard, SN 092163764653
- Microsoft 256 GB Tablet w/ keyboard, SN 027562664353
- Microsoft 256 GB Tablet w/ keyboard, SN 019977274953
- Dell Inspiron E7240, Sticker SN RGB76N22, with charger
- W photo 2GB SD card
- iPad Model A1474, Arundel Family Library Sticker 200034568
- iPad Model A1474, Arundel Library Sticker 200034566
- Google Tablet C1502W, SN 6107000411
- Toshiba 512 GB SSD, SN 58PF727FFAQP
- Toshiba 512 GB SSD, SN 96JS102LTXYV
- iPad Model A1566, White case w/ "Bretton" sticker
- Dell Latitude 3410 Laptop, Sticker w/ "ST: J4LVZZ2"
- Microsoft 256 GB Tablet w/ keyboard, SN 026790463853
- Sandisk 32 GB SD Card, SDHC
- Apple MacBook Model A1534, SN C02PJ28JGCN4
- Samsung Chromebook, Model XE930QCA, SN 3WAX9FNR800483X
- iPad Model A1670, SN DLXWTOKEHND6
- Micro Center 64GB USB Drive
- Sandisk Ultra Plus 64GB Micro SD w/ adapter
- Computer Tower, "Deerburg Trading" sticker, containing 2 HDDs
- Western Digital 500GB HDD, SN WCAS83232791
- Maxtor 20GB HDD, D740X-6L
- Sandisk 256 GB Micro SD
- MSi GT75 Titan 8SF Laptop, Device name "NIKHILMSIPC"

## Money Judgment

In the event of conviction, the United States may seek a money judgment.

## Substitute Assets

If any of the property described above, as a result of any act or omission

7

of the defendant:

    a.    cannot be located upon the exercise of due diligence;

    b.    has been transferred or sold to, or deposited with, a third party;

    c.    has been placed beyond the jurisdiction of the court;

    d.    has been substantially diminished in value; or

    e.    has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney

By: _____/s/_____
WILL HART
Assistant United States Attorney
D.C. Bar No. 1029325
Fraud, Public Corruption & Civil Rights Section
United States Attorney's Office
for the District of Columbia
601 D St. NW
Washington, D.C. 20530
202-252-7877